IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADNAN AWAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1538C |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S NOTICE OF INTENT TO RESPOND TO
COMPLAINT BY MOTION TO DISMISS IN LIEU OF ANSWER

Pursuant to the Court's special procedures order dated September 15, 2003, the United States respectfully submits this memorandum concerning its intent to respond to the complaint by filing a motion to dismiss in lieu of an answer.

MEMORANDUM OF LAW

## I. Introduction

This action was transferred to the Court by order of the United States District Court for the Northern District of Mississippi. See Awad v. United States, No. 1:93CV376-D-D, 2001 WL 741638 (N.D. Miss. April 27, 2001). Mr. Awad originally filed suit in the district court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401 (b), and 2671-2680, for false imprisonment, conspiracy, intentional infliction of emotional distress, bad faith breach of contract, invasion of privacy, negligence, trespass to chattels, and conversion, in connection with his relocation to the United States, and his entry into the United States Marshals Service Witness Security Program ("WITSEC"). Id. At the conclusion of a lengthy trial,

the district court found that all of Mr. Awad's claims were based upon contracts that he allegedly entered with the United States, and it held that, because exclusive jurisdiction over Mr. Awad's contract claims was vested in this Court, transfer pursuant to 28 U.S.C. § 1631 was appropriate. Id. Mr. Awad appealed the transfer order, but the Court of Appeals for the Federal Circuit affirmed the district court's decision. See Awad v. U.S., 301 F.3d 1367 (Fed. Cir. 2002).

## II. Brief Statement of Facts

In 1982, Mr. Awad carried a highly sophisticated bomb hidden in a suitcase from the Middle East to Geneva, Switzerland, in furtherance of a terrorist mission assigned to him by the May 15 Organization, a radical Iraqi-based Palestinian terrorist group notorious for carrying out bombings across Europe and the Middle East. Plaintiff's Amended Complaint ("Compl.") ¶¶ 4, 5; Awad v. United States, 2001 WL 741638 at *1. Rather than carrying out the bombing, Mr. Awad alerted the American embassy in Bern, Switzerland of his mission. Compl. ¶ 5. After Swiss authorities, acting upon information from the American embassy, disarmed the bomb, Mr. Awad was allowed to remain in Switzerland. Compl. ¶ 5; Awad v. United States, 2001 WL 741638, at *1. In addition to granting him permission to remain in the country, Swiss authorities provided Mr. Awad personal identity documents and a passport that allowed Mr. Awad to travel outside of

Switzerland. Compl. ¶ 6.

In August 1984, representatives from the United States Government, including the United States Attorney for the District of Hawaii, requested that Mr. Awad assist them in the capture and prosecution of various members of the May 15 organization, including Mohammed Rashid, who had allegedly bombed a commercial flight bound from Tokyo to Honolulu, resulting in the death of a passenger. Compl. ¶ 7.

In December 1984, Mr. Awad relocated to the United States, and enrolled in WITSEC. Compl. ¶ 8. Mr. Awad alleges that he agreed to move to the United States and enter WITSEC based upon promises from Government officials that he would receive a United States passport and citizenship, that the quality of his life in the United States would be no less than equal to the quality of his life in Switzerland, and that if he became disenchanted with his life in the United States, he could return to Switzerland. Compl. ¶ 7.

Mr. Awad voluntarily left WITSEC in May of 1986. Compl. ¶ 14. Mr. Rashid was arrested in Athens, Greece, in May of 1988. Compl. ¶ 22. Rather than allowing Mr. Rashid to be extradited to the United States, Greek authorities decided to prosecute him in Greece. Compl. ¶ 22. Shortly thereafter, United States Government officials asked Mr. Awad to testify at Mr. Rashid's trial in Greece. Awad v. United States, 2001 WL 741638, at *2.

Because of his financial difficulties at the time, Mr. Awad agreed to reenter WITSEC, and testify against Mr. Rashid. Id. Upon reentry into WITSEC, Mr. Awad received various types of financial assistance from the United States, including money for the payment of a home mortgage. Id. Mr. Awad again left WITSEC in March of 1991. Compl. ¶ 34.

Despite leaving WITSEC, Mr. Awad provided testimony against Mr. Rashid in his trial in Greece in June and November of 1991, and in his mandatory *de novo* re-trial by a Greek appellate court in April of 1993. Compl. ¶ 45, Awad v. United States, 2001 WL 741638, at *2.

Mr. Awad became a United States citizen on June 8, 2000, and subsequently obtained a United States passport. Compl. ¶ 61.

In his amended complaint, Mr. Awad asserts a cause of action for breach of contract. Compl. ¶¶ 63-65. Specifically, Mr. Awad alleges that he cooperated fully with the prosecution of Mr. Rashid, but that the United States failed to provide him any of the benefits that he was allegedly promised in exchange for this cooperation, including citizenship and a United States passport, a quality of life equal or better than he enjoyed in Switzerland, and the option to return to Switzerland at the time of his choosing. Compl. ¶¶ 63, 64.

ARGUMENT

The Court clearly lacks jurisdiction in this case, and accordingly, a motion to dismiss is appropriate. It is axiomatic that the Court's jurisdiction is limited to those instances in which the United States has waived its sovereign immunity. See, e.g., United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Moreover, waiver of sovereign immunity must be unequivocally expressed, and cannot be implied. See, e.g., Kania v. United States, 650 F.2d 264, 269 (Ct. Cl.), cert. denied, 454 U.S. 895 (1981). Thus, the Court's jurisdiction must be strictly construed. See, e.g., United States Department of Energy v. Ohio, 503 U.S. 607, 615 (1992); McMahon v. United States, 342 U.S. 25, 27 (1951).

Although the Tucker Act constitutes an affirmative waiver of sovereign immunity, it is solely jurisdictional in nature, and does not create any substantive right of enforcement against the United States for monetary damages. See United States v. Mitchell, 463 U.S. 206, 212 (1983). While the Tucker Act applies to claims based upon "any express or implied contract with the United States," it does not create a limitless waiver of sovereign immunity for breach of contract claims. Rather, it is well-settled that the waiver of sovereign immunity for claims sounding in contract is limited to contracts executed by the United States in its proprietary capacity.

The contract liability which is enforceable

> under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

Kania v. United States, 650 F.2d at 268; accord Horowitz v. United States, 267 U.S. 458, 461 (1925)("It has long been held by the Court of Claims that the United States when sued as a contractor cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as sovereign"); Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001); Moore v. United States, 48 Fed. Cl. 394, 397 (2000); Doe v. United States, 37 Fed. Cl. 74, 77 (1996)(finding no jurisdiction over breach of an agreement to seek a reduction in a prison sentence); Drakes v. United States, 28 Fed. Cl. 190 (1993)(finding no jurisdiction over breach of a plea agreement); Grundy v. United States, 2 Cl. Ct. 596, 598 (1983)(finding no jurisdiction over witness protection agreements).

Assuming for the purposes of a motion to dismiss that the factual allegations in Mr. Awad's amended complaint are correct, it is apparent that any alleged contracts between Mr. Awad and the United States were executed by the United States in its

sovereign, and not its proprietary, capacity. The Government's purpose in entering the purported contractual relationship with Mr. Awad was clear: to enlist his aid in the capture and prosecution of Mr. Rashid, a notorious and deadly terrorist. Compl. ¶¶ 7, 18. It is beyond dispute that the United States engages in law enforcement and counter-terrorist activities only in its sovereign capacity, and that there is no private analogue for this conduct. Because the United States entered any contractual relationship with Mr. Awad solely in its sovereign capacity, the Court lacks jurisdiction to consider Mr. Awad's breach of contract claim. See Kania v. United States, 650 F.2d at 268.

Indeed, this jurisdictional defect is so glaring that, in his appeal, Mr. Awad contended that transfer to this Court was inappropriate, because it was apparent that, pursuant to Kania, the Court would have no choice but to dismiss his suit were the appellate court to affirm the district court's transfer order. See Awad v. United States, 301 F.3d at 1374. The Federal Circuit considered this argument, and determined that the proper course of action was to allow this Court to determine its own jurisdiction.[1] Id. at 1375. Accordingly, a motion to dismiss is

[1] In determining that this Court should evaluate its own jurisdiction, the Federal Circuit cited dicta contained in Kania that suggests that the Court may possess jurisdiction to entertain a claim based upon a contract executed by the United States in its sovereign capacity if the Court finds that there was "specific authority . . . to make the agreement obligating

appropriate.

CONCLUSION

For these reasons, pursuant to a schedule established by the Court, the Government intends to file a motion to dismiss in lieu of an answer.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

---

the United States to pay money, and [the agreement] spell[s] out how in such a case the liability of the United States is to be determined." Kania v. United States, 650 F.2d at 264; see Awad v. United States, 301 F.3d at 1374-75. Because Mr. Awad does not even allege that his purported contract with the United States specifies the measure of damages for breach, it is apparent that the exception to the general rule that the Court lacks jurisdiction to entertain claims based upon contracts executed by the United States in its sovereign capacity is not applicable here.

s/Gerald M. Alexander

GERALD M. ALEXANDER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. St., N.W.,
Washington, D.C. 20530
Tele: (202) 307-0361
Fax: (202) 514-7965

Attorneys for Defendant

October 31, 2003