IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADNAN AWAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1538C |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that the Court dismiss the amended complaint upon the grounds that the Court lacks jurisdiction to consider the amended complaint, and the amended complaint fails to state a claim upon which relief may be granted. In support of our motion we rely upon the amended complaint ("Compl."), and the following brief.

DEFENDANT'S MOTION

Statement of the Case

I. Nature of the Case

This action was transferred to the Court by order of the United States District Court for the Northern District of Mississippi. See Awad v. United States, No. 1:93CV376-D-D, 2001 WL 741638 (N.D. Miss. April 27, 2001). Mr. Awad originally filed suit in the district court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401 (b), and 2671-2680, asserting a variety of claims sounding in tort in connection with his relocation to the United States, and his entry into the United States Marshals Service Witness Security Program ("WITSEC"). Id. At the conclusion of a lengthy trial, the district court found that all of Mr. Awad's claims were based upon contracts that he allegedly entered with the United States, and it

held that, because exclusive jurisdiction over Mr. Awad's contract claims was vested in this Court, transfer pursuant to 28 U.S.C. § 1631 was appropriate. Id. Mr. Awad appealed the transfer order, but the United States Court of Appeals for the Federal Circuit affirmed the district court's decision. See Awad v. United States, 301 F.3d 1367 (Fed. Cir. 2002).

In his amended complaint, Mr. Awad asserts that he entered a contractual relationship with the United States, and that the United States is liable for breach. The alleged contractual relationship is based upon an oral agreement in which Government representatives purportedly promised Mr. Awad that, among other things, they would obtain for him United States citizenship and a passport, in exchange for his agreement to relocate to the United States, and assist in the prosecution of a notorious international terrorist with whom he was associated.

II. Statement of Facts

In 1982, Mr. Awad carried a highly sophisticated bomb hidden in a suitcase from the Middle East to Geneva, Switzerland, in furtherance of a terrorist mission assigned to him by the May 15 Organization, a radical Iraqi-based Palestinian terrorist group notorious for carrying out bombings across Europe and the Middle East. Compl. ¶¶ 4, 5; Awad v. United States, 2001 WL 741638 at *1. Rather than carrying out the bombing, Mr. Awad alerted the American embassy in Bern, Switzerland of his mission. Compl. ¶ 5. After Swiss authorities, acting upon information from the American embassy, disarmed the bomb, Mr. Awad was permitted to remain in Switzerland. Compl. ¶ 5; Awad v. United States, 2001 WL 741638, at *1. In addition to granting him permission to remain in the country, Swiss authorities provided Mr. Awad personal identity documents and a passport, issued in a false name to protect to his identity, that allowed Mr. Awad to travel outside of Switzerland. Compl. ¶ 6.

In August 1984, representatives from the United States Government, including the United States Attorney for the District of Hawaii, met with Mr. Awad in Switzerland, and requested that he assist them in the capture and prosecution of various members of the May 15 organization, including Mohammed Rashid, who had allegedly bombed a commercial airliner bound from Tokyo to Honolulu, resulting in the death of a passenger. Compl. ¶ 7.

In December 1984, Mr. Awad relocated to the United States, and enrolled in WITSEC. Compl. ¶ 8. Mr. Awad alleges that he agreed to relocate to the United States and enter WITSEC solely because of promises from the Government officials with whom he met that he would receive a United States passport and citizenship, that the quality of his life in the United States would be no less than equal to the quality of his life in Switzerland, and that if he became disenchanted with his life in the United States, he could return to Switzerland. Compl. ¶ 7.

Mr. Awad voluntarily left WITSEC in May of 1986. Compl. ¶ 14. That same year, Mr. Awad testified before a grand jury in Washington, D.C., concerning the terrorist activities of Mr. Rashid and the May 15 Organization. Compl. ¶ 18. On July 14, 1987, the grand jury indicted Mr. Rashid and others for their role in the 1982 airline bombing. Compl. ¶ 18.

Mr. Rashid was arrested in Athens, Greece, in May of 1988. Compl. ¶ 22. Rather than allowing Mr. Rashid to be extradited to the United States, Greek authorities elected to prosecute him in Greece. Compl. ¶ 22. Shortly thereafter, United States Government officials asked Mr. Awad to testify at Mr. Rashid's trial in Greece. Awad v. United States, 2001 WL 741638, at *2. Because of his financial difficulties at the time, Mr. Awad agreed to reenter WITSEC, and testify against Mr. Rashid. Id. Upon reentering WITSEC, Mr. Awad received various types of financial assistance from the United States, including money for the payment of a home mortgage. Id.

Mr. Awad left WITSEC for the second time in March of 1991. Compl. ¶ 34. Despite his departure from WITSEC, Mr. Awad provided testimony against Mr. Rashid in his trial in Greece in June and November of 1991, and in his mandatory *de novo* re-trial by a Greek appellate court in April of 1993. Compl. ¶ 45; Awad v. United States, 2001 WL 741638, at *2.

Mr. Awad became a United States citizen on June 8, 2000, and subsequently obtained a United States passport. Compl. ¶ 61.

Mr. Awad asserts a cause of action against the United States for breach of contract. Compl. ¶¶ 63-65. Specifically, Mr. Awad alleges that he cooperated fully with the prosecution of Mr. Rashid, thereby fulfilling his contractual obligations, but that the United States failed to provide him any of the benefits that it promised him in exchange for this cooperation, including citizenship and a United States passport, a quality of life equal or better than he enjoyed in Switzerland, and the option to return to Switzerland if he so chose. Compl. ¶¶ 63, 64.

## ARGUMENT

### I. The Court Lacks Jurisdiction Over Mr. Awad's Contract Claims, Because Those Claims Are Premised Upon Purported Contracts Entered By The United States In Its Sovereign Capacity

The Court of Federal Claims is a court of limited jurisdiction. See Overall Roofing & Construction, Inc. v. United States, 929 F.2d 687 (Fed. Cir. 1991); Globex Corp. v. U.S., 54 Fed. Cl. 343, 347 (2002); Shellman v. United States, 9 Cl.Ct. 452, 455 (1986). This Court's jurisdiction to adjudicate a claim depends upon, and is delineated by, the extent to which the United States has waived its sovereign immunity. See United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The United States' waiver of sovereign immunity must be unequivocally expressed, and cannot be implied. See Kania v.

United States, 650 F.2d 264, 269 (Ct.Cl. 1981), citing, United States v. Testan, 424 U.S. at 399. Thus, any grant of jurisdiction to this Court must be strictly construed. See United States Department of Energy v. Ohio, 503 U.S. 607, 615 (1992); McMahon v. United States, 342 U.S. 25, 27 (1951). As the Court has stated, "[a]mbiguities regarding the existence of subject matter jurisdiction must be 'resolved against the assumption of jurisdiction.'" Globex, 54 Fed. Cl. at 347, (quoting Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994)). Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988).

Although the Tucker Act constitutes an affirmative waiver of sovereign immunity, it is solely jurisdictional in nature, and does not create any substantive right of enforcement against the United States for monetary damages. See United States v. Mitchell, 463 U.S. 206, 212 (1983). Pursuant to the Tucker Act, 28 U.S.C. § 1941(a)(1), the Court has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, . . . ." The Tucker Act is not a limitless waiver of sovereign immunity for claims based in contract, however. Rather, it is well-settled that the waiver of sovereign immunity for contract claims is limited to contracts executed by the United States in its proprietary capacity. See Kania v. United States, 650 F.2d 264, 269 (Ct. Cl.), cert. denied, 454 U.S. 895 (1981); Horowitz v. United States, 267 U.S. 458, 461 (1925); Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001); Silva v. United States, 51 Fed. Cl. 374, 377 (2002); Moore v. United States, 48 Fed. Cl. 394, 397 (2000); Sadeghi v. United States, 46 Fed. Cl. 660 (2000); Doe v. United States, 37 Fed. Cl. 74, 77 (1996); Drakes v. United States, 28 Fed. Cl. 190 (1993);

Commonwealth of Kentucky, Natural Res. and Envtl. Protection Cabinet v. United States, 27 Fed. Cl. 173, 179 (1992); Grundy v. United States, 2 Cl. Ct. 596, 598 (1983. As the Court of Claims has explained,

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

Kania v. United States, 650 F.2d at 268. Accordingly, the Court may exercise jurisdiction over Mr. Awad's contract claims only if those claims assert the existence of a contract executed by the United States in its proprietary capacity, and for which there is a private analogue.

A. The Contract Upon Which Mr. Awad Premises His Claim Was Executed By The United States In Its Sovereign Capacity

Assuming for the purposes of this motion only that Mr. Awad correctly asserts that the United States entered a contractual relationship with him, it is apparent that the United States entered this contractual relationship solely in its sovereign capacity. The Government's purpose in entering the purported contractual relationship with Mr. Awad was clear: to enlist his aid in the capture and prosecution of Mr. Rashid, a notorious and deadly terrorist. Compl. ¶¶ 7, 18. It is beyond dispute that the United States engages in law enforcement and counter-terrorism activities exclusively in its sovereign capacity. See Sadeghi v. United States, 46 Fed. Cl. at 662-663 ("Because administering the criminal justice system is an action that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily

give rise to an action under the Tucker Act for damages"); Drakes v. United States, 28 Fed. Cl. at 193. Moreover, there is clearly no private analogue for the Government's conduct of its law enforcement and counter-terrorism activities. See Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997)(purported failure of Federal Aviation Administration to take enforcement action has no private analogue); Akutowitz v. United States, 859 F.2d 1122 (2d Cir. 1988)(Government's alleged wrongful withdrawal of claimant's citizenship was a governmental function of a quasi-adjudicative nature for which there is no private analogue). Indeed, the consideration the United States allegedly promised Mr. Awad in exchange for his cooperation with its attempt to capture and prosecute Mr. Rashid--citizenship, a United States passport, and protection in WITSEC–are sovereign functions which cannot be performed by private parties. See United States v. Macintosh, 283 U.S. 605, 615 (1931)(Government has discretion with regard to issues concerning naturalization); Grundy v. United States, 2 Cl. Ct. at 598-99 (discussing sovereign nature of WITSEC). Because it is plain that the United States entered any contractual relationship with Mr. Awad solely in its sovereign capacity, the Court lacks jurisdiction to consider his contract claims. See Kania v. United States, 650 F.2d at 268.

B. Mr. Awad's Claims Do Not Fall Within The Limited Exception To The Rule Regarding The Execution Of Contracts In The Government's Sovereign Capacity

In Kania, the Court of Claims stated that this Court may possess jurisdiction to entertain a claim based upon a contract executed by the United States in its sovereign capacity if the Court finds that there was "specific authority . . . to make the agreement obligating the United States to pay money, and [the agreement] spell[s] out how in such a case the liability of the United States is to be determined." Kania v. United States, 650 F.2d at 264. The Court of Appeals for the

Federal Circuit has found that, to fall within the second part of this limited exception to the general rule that the Court lacks jurisdiction to consider monetary claims based upon contracts executed by the United States in its sovereign capacity, a plaintiff must demonstrate that the "agreement clearly and unmistakably subjects the government to monetary liability for any breach." Sanders v. United States, 252 F.2d at 1335. Because the agreement Mr. Awad purportedly entered with the United States plainly does not fall within this exception, the Court should dismiss Mr. Awad's amended complaint.

It is apparent that the purported contract between Mr. Awad and the United States does not "clearly and unmistakably" provide that the United States is liable for monetary damages in the event of breach. Indeed, Mr. Awad explicitly asserts that the parties contemplated a remedy for breach, and that the remedy did not involve the payment of damages. Rather, Mr. Awad asserts that, if the United States failed to meet its obligations, and Mr. Awad therefore became dissatisfied with his decision to relocate to the United States, the Government would be required to permit him to return to Switzerland. Compl. ¶¶ 7, 63.[1] Because Mr. Awad's allegations demonstrate that the parties did not contemplate a monetary remedy in the event of breach, it is plain that Mr. Awad cannot demonstrate that this case falls within the exception to the general

---

[1] In certain instances, a suit for specific performance of the terms of a contract executed by the United States in its sovereign capacity may lie in the appropriate forum. See Santobello v. New York, 404 U.S. 257 (1971)(remedy for Government's breach of plea agreement was claim for specific performance, or defendant's withdrawal of guilty plea). While a suit for specific performance in the appropriate district court to enforce the Government's purported promise to allow Mr. Awad to return to Switzerland at a time of his choosing may have been proper at some point after Mr. Awad relocated to the United States, such a suit is clearly no longer feasible, because Mr. Awad has obtained citizenship and a passport, Compl. ¶ 61, and accordingly, he may now travel to Switzerland at his pleasure. In any case, Mr. Awad could not have properly asserted a suit for specific performance in this Court at any time. See Drakes v. United States, 28 Fed. Cl. at 194.

rule that the Court lacks jurisdiction over contracts executed by the United States in its sovereign capacity. See Sanders v. United States, 252 F.2d at 1335.

Furthermore, Mr. Awad cannot establish that the Government representatives who purportedly promised Mr. Awad that he would receive the benefits at issue possessed specific authority to make those purported promises. It is axiomatic that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority," City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), and that contracts entered by Government personnel who lack authority to bind the Government are unenforceable. Id. at 820-821.

It is apparent that the Government officials who purportedly entered into the contractual relationship with Mr. Awad lacked authority to bind the Government in the manner Mr. Awad has alleged. It is beyond dispute that, during the relevant time period, "[t]he sole authority to naturalize persons as citizens of the United States [was] conferred upon the Attorney General," 8 U.S.C. § 1421(a), and that pursuant to 28 C.F.R. § 0.105(b), the Attorney General delegated that authority to the Commissioner of the Immigration and Naturalization Service ("INS").[2] Mr. Awad has not even alleged that the INS Commissioner delegated his authority with regard to the naturalization of Mr. Awad to the Government representatives with whom he met in Switzerland. Moreover, because United States passports may only be issued to United States citizens, see Haig v. Agee, 453 U.S. 280, 292-93 (1981), it is plain that the Government representatives lacked authority to promise Mr. Awad, who was at that time a citizen of Iraq, Compl. ¶ 4, that he would

[2] The agency formerly known as INS is now denominated the United States Immigration and Customs Enforcement Bureau, and is a component of the Department of Homeland Security. See 6 U.S.C. § 291.

receive a United States passport. Because the Government officials who entered the alleged contract with Mr. Awad lacked specific authority, it is apparent that this case does not meet the limited exception to the general rule regarding the Court's lack of jurisdiction over claims based upon contracts executed by the United States in its sovereign capacity. See Kania v. United States, 650 F.2d at 264.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

s/Gerald M. Alexander

GERALD M. ALEXANDER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. St., N.W.,
Washington, D.C. 20530
Tele: (202) 307-0361
Fax: (202) 514-7965

Attorneys for Defendant

December 15, 2003