IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADNAN AWAD | ) | |
| | ) | |
| VS. | ) | No. 03-1538C |
| | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff, Adnan Awad, by and through counsel, and for his response to Defendant's Motion to Dismiss respectfully requests that the Court deny Defendant's motion upon the grounds that the Amended Complaint sets forth grounds for jurisdiction and Plaintiff has stated a claim upon which relief can be granted. In support of this response, Plaintiff submits the following brief.

## PROCEDURAL HISTORY

Plaintiff originally instituted this action in the United States District Court for the Northern District of Mississippi, Eastern Division, on December 17, 1993. Plaintiff filed this action seeking money damages against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-2680. Plaintiff asserted the following tort claims: false imprisonment, conspiracy, intentional infliction of emotional distress, bad faith breach of contract, invasion of privacy, negligence, trespass to chattels and conversion. Plaintiff also asserted federal constitutional claims against three individual federal government employees.

The United States filed a motion to dismiss Plaintiff's claims against the individual defendants on the grounds of qualified immunity. The district court denied the Government's motion and the Government appealed to the Fifth Circuit Court of Appeals. On November 27,

1996, the Fifth Circuit affirmed the district court's decision. *See Sealed Plaintiffs v. Sealed Defendants*, 103 F.3d 126 (5th Cir. 1996)(Table). After completing discovery, the Government filed a motion for summary judgment seeking dismissal of Plaintiff's claims on a number of grounds, including lack of jurisdiction under the FTCA. The district court denied the motion and, again, the Government appealed. The Fifth Circuit affirmed the decision of the district court without issuing an opinion. *See Sealed Plaintiffs v. Sealed Defendant*, 211 F.3d 126 (5th Cir. 2000)(Table). The case then proceeded to trial on February 26, 2001.

Following an eight-day trial, and briefing by the parties, the district court determined that Plaintiff's tort claims arise out of purported contracts he had with the United States and, therefore, exclusive subject matter jurisdiction over Plaintiff's claims resided in this Court pursuant to the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). However, in lieu of dismissing Plaintiff's claims, and in view of the district court's determination of the jurisdictional question after an extended trial, the district court transferred this action to this Court pursuant to 28 U.S.C. § 1631. Plaintiff timely appealed the transfer order to the Federal Circuit Court of Appeals.

On September 4, 2002, the Federal Circuit issued its opinion affirming the district court's transfer order. The Federal Circuit determined that Plaintiff's tort claims arise from promises made to him concerning United States citizenship and a passport. *Awad v. United States*, 301 F.3d 1367, 1373-74 (Fed. Cir. 2002). The Federal Court stated further that it would be up to this Court to determine whether it has jurisdiction over Plaintiff's suit. *Id*. at 1375.

Following the appellate decision, Plaintiff filed an amended complaint in this Court. The amended complaint asserts a contract claim based on promises made to Plaintiff by attorneys, agents, and employees acting on behalf of the United States. Compl. ¶ 63. Plaintiff asserts that these representatives of the United States guaranteed him a certain standard of living in the

United States in exchange for his cooperation and assistance in the capture and conviction of international terrorists. *Id*. Plaintiff asserts that these representatives made this guarantee with full knowledge of Plaintiff's standard of living in Switzerland. *Id*. Plaintiff asserts further that the United States breached this agreement and took additional actions to prevent Plaintiff from leaving the country. *Id*. at ¶ 64. In support of these allegations, the amended complaint details the history of Plaintiff's relationship with the United States government from its initial interest in Plaintiff, its failure to allow Plaintiff to return to Switzerland, and Plaintiff's receipt of citizenship and a passport some sixteen years after he entered the United States.

The United States has now filed a motion to dismiss the amended complaint, pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims ("RCFC"), on the grounds that this Court also lacks jurisdiction and that the amended complaint fails to state a claim upon which relief can be granted. Because dismissal is inappropriate in these circumstances, Defendant's motion should be denied.

## STANDARD OF REVIEW

In passing on the pending motion, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In fact, this Court must presume that the factual allegations contained in the complaint are true. *See Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). A complaint should not be dismissed for failure to state a claim unless it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414 (Fed. Cir. 1989). The Court's task is not to determine whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to

support his claims. *Kinne v. United States*, 21 Cl. Ct. 104, 107 (1990) (*quoting Scheuer v. Rhodes*, 416 U.S. at 236).

**ARGUMENT**

In support of its motion to dismiss, the Government argues that this Court does not have jurisdiction pursuant to the Tucker Act because the contracts alleged by Plaintiff were executed in the Government's sovereign capacity and there is no private analogue for the Government's law enforcement and counter-terrorism activities. Defendant's Brief at 6-7 (citing *Sadeghi v. United States*, 46 Fed. Cl. 660, 662, 663 (2000); *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997); and, *Akutowitz v. United States*, 859 F.2d 1122 (2d Cir. 1988)). The Government also argues that Plaintiff's claims should be dismissed because there is no specific authority in the relevant government agents to obligate the United States to pay money and the agreements do not spell out how the Government's liability is to be determined. Defendant's Brief at 7 (citing *Kania v. United States*, 650 F.2d 264, 268 (Ct.Cl. 1981), and *Sanders v. United States*, 252 F.3d 1329, 1335 (Fed. Cir. 2001)). However, because Plaintiff has alleged a contract with the Government cognizable under the Tucker Act and has alleged each and every element necessary to establish the existence of such a contract, Defendant's motion is without merit and should be denied.

I. This Court Has Jurisdiction Over Plaintiff's Amended Complaint.

Plaintiff does not quibble with the Government's description of Tucker Act jurisdiction at pages 4 and 5 of its brief. The Tucker Act constitutes an affirmative waiver of sovereign immunity and grants this Court jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, . . . ." 28 U.S.C. § 1941(a)(1). To overcome a challenge to this Court's jurisdiction, a well pleaded



TO:169063.1

allegation of an express contract is sufficient. *Trauma Serv. Group Ltd. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1995). *See also*, *Bailey v. United States*, 54 Fed. Cl. 459, 480 (2002)(citing *Trauma Service*). In *Trauma Service*, the Federal Circuit stated that:

> any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration and a Government representative who had actual authority to bind the Government.

*Id*. at 1326.

In the instant case, Plaintiff has alleged the requisite elements for an express contract claim. The Amended Complaint asserts that the United States Attorney for the District of Hawaii and an attorney with the Department of Justice offered Plaintiff a United States passport, United States citizenship, and a standard of living equal to or greater than what Plaintiff enjoyed in Switzerland. Compl. at ¶ 7. Plaintiff accepted this offer and came to the United States. Compl. at ¶ 8. The consideration for the government's offer was Plaintiff's agreement to leave Switzerland and provide assistance to the government in the capture and prosecution of members of the May 15 terrorist organization. Compl. at ¶ 7. Plaintiff asserts that these promises were made by the Government, through its attorneys, agents, and employees. Compl. at ¶ 63.

These allegations are sufficient to meet Plaintiff's burden to establish jurisdiction in this Court. In *Allen v. United States*, 100 F.3d 133, 135 (Fed. Cir. 1996), the court stated that there is no absence of subject matter jurisdiction in the United States Court of Federal Claims where a plaintiff "non-frivolously alleged a contract with the Government, and the Court of Federal Claims has jurisdiction over contract claims." In other words, the jurisdictional issue is resolved where a valid contract is pleaded, not ultimately proven. *Total Medical Management v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997). Accordingly, Plaintiff's allegations satisfy this

Court's jurisdiction under the Tucker Act and the Government's motion pursuant to Rule 12(b)(1) should be denied.

II. Plaintiff's Amended Complaint States A Claim Upon Which Relief Can Be Granted.

Turning to the Rule 12(b)(4) motion, the Government relies primarily on *Kania v. United States*, 650 F.2d 264 (Ct.Cl. 1981), and similar cases, for the proposition that contracts executed in the Government's sovereign capacity are unenforceable in this Court. The Government contends that the contracts alleged by Plaintiff fall within this rule. However, these cases are inapplicable and do not require dismissal of Plaintiff's Amended Complaint.

A. Plaintiff's contracts with the Government were not entered into within the context of the criminal justice system.

To fit this case within *Kania*, the Government asserts that its relationship with Plaintiff involves the administration of the criminal justice system and, therefore, it could not have contracted with Plaintiff in its proprietary capacity. The Government also alleges that there is no private analogue to its law enforcement and counter-terrorism activities. In doing so, the Government paints its relationship with Plaintiff with too broad a brush. Because Plaintiff was not a criminal defendant and is not seeking enforcement of a plea agreement, cooperation agreement, or immunity agreement, *Kania* and its progeny are inapplicable.

The Court of Federal Claims found these distinctions to be important in the recent case of *Bailey v. United States*, 54 Fed. Cl. 459 (2002)(*Bailey* II). In *Bailey* II, an attorney for a criminal defendant brought a Tucker Act claim to enforce an express and implied-in-fact contract with the United States concerning his assistance in helping his client perform obligations under a plea agreement. Similar to the present case, the government alleged that the claim was based on an agreement arising in the context of a criminal justice proceeding and sought dismissal of the

claim on that basis. *Id*. at 480. The court rejected this argument both prior to trial, *see Bailey v. United States*, 40 Fed. Cl. 449 (1998)(*Bailey* I), and after a trial on the merits. *Bailey* II, 54 Fed. Cl. at 483. In doing so, the court distinguished most of the cases relied upon by the Government in the instant case.

The *Bailey* II court distinguished three of the cases cited by the Government on the grounds that they involved the alleged breach of plea agreements. *Id*. at 480-82, discussing *Doe v. United States*, 37 Fed. Cl. 74 (1996)(plea agreement); *Drakes v. United States*, 28 Fed. Cl. 190 (1993)(plea agreement); *Sanders v. United States*, 252 F.3d 1329 (Fed. Cir. 2001)(plea agreement). In each of these decisions, the courts dismissed the claims on the grounds that the agreements concerned the conduct of parties to a criminal proceeding. *Doe*, 37 Fed. Cl. at 78; *Drakes*, 28 Fed. Cl. at 193, *Sanders*, 252 F.3d at 1334-35. In *Silva v. United States*, 51 Fed. Cl. 374, 377, *aff'd*, 51 Fed. Appx. 12 (Fed. Cir. 2002), a case brought by a criminal defendant over the alleged breach of an agreement with a government informant, the court similarly determined that the government's activities fell within the operation of the criminal justice system. Incidentally, in *Silva*, this Court distinguished between an a Government contract with a mere informer and one with the actual target of a criminal investigation. *Silva*, 51 Fed. Cl. At 378.

The *Bailey* II court also discussed *Kania v. United States*, 650 F.2d 264 (Ct. Cl. 1981), where the Court of Claims dismissed a claim by a federal grand jury witness involving an immunity agreement. The court recognized that, under *Kania*, the possibility of a binding contract subject to Tucker Act jurisdiction in a criminal proceeding existed where there was specific authority on the part of the governmental agent to make an agreement obligating the United States to pay money, and the agreement spelled out how the liability of the United States is to be determined. *Bailey* II, 54 Fed. Cl. at 481, quoting *Kania*, 650 F.2d at 268. However, the

court found this limited exception stated in *Kania*, and further defined in *Sanders*, to be inapplicable to Bailey's claim. *Id*. at 482. The court noted that *Kania* and *Sanders* would apply to any claims by Bailey's client concerning a plea agreement, but not Bailey's complaint alleging the breach of a separate contract between Bailey and the Government. *Id*. Simply put, the fact that Bailey's separate contract with the Government arose out of the criminal proceeding did not invoke the rule in *Kania*.

The remaining cases relied upon by the Government are equally distinguishable. *Horowitz v. United States*, 267 U.S. 458, 461 (1925), turned on the obstruction of the government's performance as a contractor "resulting from its public and general acts as a sovereign." In *Moore v. United States*, 48 Fed. Cl. 394, 397, 398-99 (2000), the court applied *Trauma Service* to find Tucker Act jurisdiction, but ultimately dismissed the complaint because the plain language of the agreement at issue was not breached by the government. In *Sadeghi v. United States*, 46 Fed. Cl. 660 (2000), the court dismissed a claim involving an immunity and protection agreement with a convicted felon. In *Commonwealth of Kentucky, Natural Res. and Envtl. Protection Cabinet v. United States*, 27 Fed. Cl. 173, 179-80 (1992), the court found that the government's repair and maintenance of locks and dams was a public and sovereign function, and that the agreement at issue, a Memorandum of Understanding, was not an enforceable contract. In *Grundy v. United States*, 2 Cl. Ct. 596, 598 (1983), the court declined jurisdiction over a protection agreement allegedly entered into with the United States Marshals Service. Accordingly, none of these cases apply to Plaintiff's relationship with the Government or the promises at issue.

Plaintiff was never a criminal defendant, nor was there any pending prosecution of members of the May 15 terrorist organization when the promises were made. In fact, no

members of this organization were even in custody. The Government simply hoped, with Plaintiff's assistance, to capture members of the organization and prosecute them. As such, the Government's promises to Plaintiff were made outside the context of any plea agreement, immunity agreement, or protection agreement.

Furthermore, obtaining citizenship and a passport for a person, as opposed to granting citizenship, is a function that can be performed by private parties. In the context of this case, United States Attorney Dan Bent, and various FBI agents, acted as Plaintiff's private attorneys for immigration matters. In fact, they assisted Plaintiff in filing documents with the INS from 1986 to 1994. Compl. at ¶¶ 16, 19-21, 23-24, 27, 31-33, 36-37, 42, 44, 46-47, 49. These Government attorneys and agents also determined for Plaintiff what documents to be filed with the INS and assisted in the preparation of those documents. *Id*. Although Plaintiff ultimately testified as a witness in a criminal prosecution, the contracts at issue do not involve the Government acting as a sovereign.

Under these circumstances, the sovereign capacity defense does not apply. Government attorneys promised Awad citizenship and a passport, and subsequently undertook to obtain citizenship status by filing applications with the INS. The activities of the Government in this respect were not exclusive functions of a sovereign, but reflect services similar to those performed by private parties. Moreover, the *Bailey* II decision shows that a claim to enforce a contract with the Government for services provided to the Government by a person who is not a party to a criminal proceeding is cognizable under the Tucker Act and is not subject to *Kania* and *Sanders*. Therefore, Plaintiff's allegations in the Amended Complaint are sufficient for Tucker Act jurisdiction.

B. Discovery should be permitted to identify the source of the specific authority for

the promises made to Plaintiff.

The Government contends that Plaintiff cannot establish that the Government representatives who made the promises at issue possessed specific authority to do so. Defendant's Brief at 9. The fact that Plaintiff cannot establish through his initial pleading that the specific Government representatives had authority to make a binding contract does not subject the complaint to dismissal. The authority to contract was not at issue while the case was pending before the district court in Mississippi. Therefore, additional discovery would be required to determine what Government official authorized the promises made to Plaintiff and whether there is some regulatory or statutory scheme that authorized the official to make the promise.

The Federal Circuit recently reversed a trial court's grant of a motion to dismiss under similar circumstances. In *Sommers Oil Company v. United States*, 241 F.3d 1375 (Fed. Cir. 2001), the Federal Circuit reviewed the trial court's dismissal of a complaint for failure to sufficiently allege legal authority on the part of government agents to make the contract at issue. The plaintiff in *Sommers Oil*, a government informant, sought to recover on an agreement with a Special Agent of the Criminal Investigation Division of the IRS that he could retain certain funds received from a suspect. The Federal Circuit noted that the complaint did not specifically assert the government's contractual commitment was made by a person with statutory or regulatory authority to do so; however, the complaint, read liberally, was nevertheless sufficient. *Id*. at 1379. The court also discussed the difficulty faced by a plaintiff and the impropriety of a motion to dismiss under these circumstances.

> The allegation of authorization is general, but it is not surprising under the circumstances that Sommers was not more explicit in its allegations of authorization. Persons who cooperate in criminal investigations typically deal



TO:169063.1

> with the investigating agents and not with their superiors, and may often be unaware of what level of authority is required to commit the government to contractual undertakings. Sommers has alleged both that Purvis had authority to contract and that one of his superiors with such authority ratified the contract, and there is nothing in the record to indicate that either Agent Purvis or his superiors lacked such authority. While it is true that such cooperating witnesses may be taking the risk that their arrangements with the government will not be enforceable if the arrangements turn out not to be authorized at the appropriate level within the government, that does not justify holding that they cannot survive a motion to dismiss unless they know what government official actually authorized the arrangement and what regulatory or statutory provision authorized that official to do so. We therefore hold that the complaint in this case was sufficient to state a claim for a breach of contract by the government.

*Id*. at 1380-81.

The Court should reach the same result here. The Amended Complaint specifically identifies the persons who made the commitments to Plaintiff and they include a United States Attorney and an attorney for the Department of Justice. Compl. at ¶ 7. The Amended Complaint states further that these promises were made by the Government, through these attorneys, agents, or employees. Compl. at ¶ 63. At this stage, Plaintiff does not under what authority these promises were made or whether the promises were authorized by someone with statutory or regulatory authority to commit the Government to contractual liability. There was no evidence presented before the district court that these attorneys did not have appropriate authority to make these commitments to Plaintiff in exchange for his relocation and assistance. Accordingly, this Court should find that the Amended Complaint is sufficient to assert authority for the contracts at issue. *See Bailey v. United States*, 40 Fed. Cl. 449, 461-62 (1998) (denying motion to dismiss and allowing discovery on issue of specific authority to contract).

The Government's contention that the sole authority to naturalize persons resides in the Attorney General and, by delegation, the Commissioner of the Immigration and Naturalization Service ("INS") does not change this result. In making this argument, the Government misreads

Plaintiff's claim. Plaintiff has alleged that he was promised a passport and United States citizenship. However, at the time, Plaintiff had no idea how this would be accomplished. When Plaintiff withdrew from the Witness Security Program, United States Attorney Dan Bent took it upon himself to handle Plaintiff's immigration status through the INS. Thereafter, Dan Bent, and other government agents, assisted Plaintiff as his legal counsel on immigration matters. The fact that these representatives are without authority to award citizenship or issue a passport themselves does not mean they did not have the ability or authority to obtain citizenship and a passport for Plaintiff through appropriate channels. The Amended Complaint shows that these representatives could and did handle Plaintiff's immigration status at least until 1994. Up and until the end of 1994, Government representatives were Plaintiff's primary advisers on immigration matters. It is also clear that the Government had statutory authority to award Plaintiff immediate citizenship under Title 8 U.S.C. § 1427, yet declined to do so. Compl. at ¶¶ 42, 49, 60.

Accordingly, this Court should find that Plaintiff's Amended Complaint sufficiently alleges that the Government representatives who made promises to Plaintiff had authority to do so. At this stage in the proceeding, Plaintiff should be afforded an opportunity to investigate the specific authority for the promises made to him. *See also*, *Perri v. United States*, 35 Fed. Cl. 627, 632-33 (1996) (finding allegations of authority sufficient to withstand motion to dismiss and allowing opportunity to conduct discovery on contracting authority issue). The fact that Plaintiff has not specifically identified such authority in his Amended Complaint does not require dismissal of this action.

**CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(4) should be denied.

RESPECTFULLY SUBMITTED, this the 18th day of February, 2004.

**PHELPS DUNBAR, L.L.P.**

By: s/ William M. Beasley

William M. Beasley MSB # 2285
One Mississippi Plaza, Seventh Floor
Post Office Box 1220
Tupelo, Mississippi 38802-1220
Telephone: (662) 842-7907
Telecopier: (662) 842-3873

**COUNSEL FOR PLAINTIFF**