# In the United States Court of Federal Claims

No. 03-1538
(Filed: July 9, 2004)

| | |
|---|---|
| **ADNAN AWAD and LYNN AWAD,** Plaintiffs, v. **THE UNITED STATES,** Defendant. | Motion to dismiss; contract; subject matter jurisdiction; Tucker Act, 28 U.S.C. § 1491; authority to bind the government; sovereign versus proprietary government contracts. |

*William M. Beasley*, Tupelo, MS, counsel of record for Plaintiffs.

*Gerald Mark Alexander*, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, counsel of record for defendant, with whom were *David M. Cohen*, Director, *James M. Kinsella*, Deputy Director, and *Peter D. Keisler*, Assistant Attorney General.

## OPINION

**DAMICH**, Chief Judge.

## I. *Introduction*

Before the Court is a motion to dismiss brought by Defendant the United States (hereinafter "Def.'s Mot."). In that motion, Defendant requests that the Court dismiss the contract claim brought by Adnan and Lynn Awad, on the basis of Rules 12(b)(1) and 12(b)(6)[1] of

[1] Defendant cites to Rule 12(b)(4) as the court's rule regarding motions to dismiss for failure to state a claim upon which relief can be granted. Def.'s Mot. at 1. The correct rule, however, is Rule 12(b)(6).

the Rules of the United States Court of Federal Claims (hereinafter "RCFC") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

After careful consideration of the arguments, and for the reasons set forth below, the Court hereby GRANTS Defendant's motion to dismiss.

## II. *Background*

In 1982, Mr. Adnan Awad (hereinafter "Plaintiff"), an Iraqi citizen, carried a suitcase bomb to Switzerland, acting at the behest of the May 15 terrorist organization. Am. Compl. ¶ 4. Upon arrival, however, he turned himself in to the United States Embassy. Thereafter, Plaintiff was permitted to stay in Switzerland and was given many amenities. *Id.* ¶¶ 5-6. In 1984, Plaintiff met with Daniel Bent, a United States Attorney; Larry Lippe, an attorney with the Department of Justice (hereinafter "DOJ"); and Bob Vericker, an agent with the Federal Bureau of Investigation (hereinafter "FBI"). Bent and Lippe allegedly offered Plaintiff a United States passport and citizenship and told him that "his life in the United States would be at least equal to what he enjoyed in Switzerland" and that he could return to Switzerland at any time if he was unsatisfied with his life in the United States. In return, Plaintiff would assist the United States in the prosecution of members of the May 15 terrorist organization. *Id.* ¶ 7. Mr. Awad decided to come to the United States, where he became involved in the Witness Security Program (hereinafter "WITSEC"), a program run by the United States Marshals Service (hereinafter "USMS"). *Id.* ¶ 8. Before Plaintiff entered the program, however, he was required to complete a memorandum of understanding, which contained a clause stating that the USMS would retain Mr. Awad's identification documents until Plaintiff decided to "revert to his . . . true identity." *Id.* ¶¶ 9-10. Plaintiff claims that this promise was reiterated by Inspector Gerke, the official who signed the memorandum on behalf of the USMS. *Id.* ¶ 11.

Plaintiff left the WITSEC program in 1986, at which point he requested his passport from the USMS but did not receive it. *Id.* ¶¶ 14-16. As a result, Plaintiff was unable to leave the country for Switzerland, as allegedly promised by Defendant. Also in 1986, Plaintiff testified before a grand jury, which resulted in indictments against various terrorists. *Id.* ¶ 18. Soon after this, Mr. Awad submitted a request for asylum, which was not granted until almost two years later. *Id.* ¶¶ 19, 21.

Plaintiff received a refugee travel document in the late 1980s, but was not given a passport. *Id.* ¶ 23. In an effort to obtain a passport, Plaintiff met with FBI agent Alan Maxwell, who allegedly told Mr. Awad that "he would receive a passport and a reward" of $4 million in 6 months.[2] *Id.* ¶¶ 25-26. Mr. Awad rejoined WITSEC later that year, but was "terminated" in 1991. *Id.* ¶¶ 28, 34. Nevertheless, Plaintiff traveled to Greece to testify in the trial and retrial of an alleged terrorist. *Id.* ¶¶ 38, 45. Throughout this entire process, Plaintiff was allegedly told

---

[2] However, Plaintiff has not alleged that this discussion of a passport and a reward constituted a contract. *See* Am. Compl. ¶ 26; Pl.'s Resp. at 5, 11.

many times, by many different agents for the United States government, that he would be receiving a passport shortly, yet Plaintiff did not become a United States citizen until June 8, 2000. *Id*. ¶ 61. He has since obtained a United States passport. *Id*.

Plaintiff filed suit in the United States District Court for the Northern District of Mississippi pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-2680. *Awad v. United States*, No. 1:93CV376-D-D, 2001 WL 741638 (N.D. Miss. Apr. 27, 2001). The district court found that Plaintiff's claims were based on alleged contracts that he might have had with the United States, and therefore ordered that the case be transferred to the Court of Federal Claims. *Id*. at *8. Plaintiff appealed the transfer order, but the district court's decision was affirmed by the Federal Circuit. *Awad v. United States*, 301 F.3d 1367 (Fed. Cir. 2002). On June 23, 2003, the case was officially transferred to this court as a contract action, and on September 4, 2003, Plaintiff filed his amended complaint, alleging breach of contract and seeking $5 million in compensation.[3] Defendant then filed the current motion.

## III. Analysis

### A. *Motion to Dismiss Standard*

Pursuant to RCFC 12(b)(1) and 12(b)(6), the Court is required to grant Defendant's motion to dismiss if it finds that the Court of Federal Claims does not have jurisdiction over Plaintiff's claim or that Plaintiff has failed to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the Court must presume that the undisputed factual allegations included in Plaintiff's complaint, which are set forth above, are true. *See Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, in cases where the moving party questions subject matter jurisdiction, the nonmoving party, in this case Plaintiff, has the burden of proving that subject matter jurisdiction does indeed exist. *Id*. at 748. Since Plaintiff has not met this burden, his case must be dismissed.

### B. *Does this Court have subject matter jurisdiction over Plaintiff's claim?*

Plaintiff argues that jurisdiction exists under the Tucker Act, which grants this Court jurisdiction "to render judgment upon any claim against the United States founded . . . upon . . . any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); Am. Compl. ¶ 3. The Tucker Act serves as a waiver of sovereign immunity as to such claims, giving this Court jurisdiction over contract disputes between the government and private parties. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

Plaintiff contends that, since he has "alleged the requisite elements for an express contract

---

[3] Although Plaintiff has requested $5 million in damages, Plaintiff has given the Court no indication as to his method for arriving at that amount.

claim," his claim should survive a motion to dismiss for lack of subject matter jurisdiction. Pl.'s Resp. to Def.'s Mot. to Dismiss (hereinafter "Pl.'s Resp.") at 5. However, even if Plaintiff has alleged all elements of an express contract, this Court might not have jurisdiction because the Tucker Act's waiver of sovereign immunity does not extend to all agreements made by the government. *See Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981); *Sadeghi v. United States*, 46 Fed. Cl. 660, 662 (2000). Therefore, disputes regarding certain agreements made by the government will not be within the jurisdiction of this Court.

1. **The contract alleged by Plaintiff is not within this Court's jurisdiction because it was made by the United States in its sovereign capacity.**

The government has not waived its sovereign immunity with regard to all contracts that it makes with private entities. *Kania*, 650 F.2d at 268. In fact, binding precedent indicates that the application of sovereign immunity depends on the type of contract the government makes. *Id*. The two main categories of contracts that the government makes are often referred to as proprietary and sovereign. *See Doe v. United States*, 37 Fed. Cl. 74, 77 (1996). The United States generally has waived sovereign immunity with regard to proprietary contracts, which are contracts in which "the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." *Kania*, 650 F.2d at 268; *see also Bloemker v. United States*, 229 Ct. Cl. 690, 692-93 (1981). In contrast, the government has not waived sovereign immunity for contracts that it makes in its sovereign, or governmental, capacity. *See Kania*, 650 F.2d at 268. As a result, this Court has jurisdiction over most proprietary contracts, but generally does not have jurisdiction over contracts the government makes in its sovereign capacity. *See id*.; *see also Doe*, 37 Fed. Cl. at 77. Therefore, the pertinent question is whether Plaintiff's claim properly falls within the broad category of proprietary contracts or the narrow exception of contracts made in the government's sovereign capacity.

It is obvious that the alleged contract in the case at bar was made in the government's sovereign capacity, since both counter-terrorism efforts and the granting of citizenship and passports are solely government functions, neither of which has a private analogue. The alleged contract was made for the purpose of having Plaintiff testify against members of the May 15 Organization, a purpose that implicates the criminal justice system by relating to the counter-terrorism efforts of this nation. The Court of Federal Claims has found in many instances that, when the government makes a contract involving "activities of the criminal justice system, [these] activities . . . , without question, lie 'at the heart of sovereign action.'" *Silva v. United States*, 51 Fed. Cl. 374, 377 (Fed. Cl. 2002) (quoting *Sadeghi*, 46 Fed. Cl. at 662) (finding that the court lacked jurisdiction over an agreement between two private parties that was made "for the purpose of furthering undercover law enforcement operations"); *see also Grundy v. United States*, 2 Cl. Ct. 596, 597-98 (1983) (finding that an alleged contract for the protection of a plaintiff who was housing members of the witness protection program "was not of a kind which the government would make in a non-sovereign capacity").

In addition, an alleged contract for citizenship and a passport is not the type of contract that a private person could make because only the government has the power to naturalize citizens and award passports. *See* 22 U.S.C.§ 211a (stating that only certain government entities may issue passports); *Akutowicz v. United States*, 859 F.2d 1122, 1125-26 (2d Cir. 1988) (finding that citizenship is a sovereign function, having no private analogue under the Federal Torts Claims Act). Plaintiff is correct that private citizens can aid someone in getting a passport. Pl.'s Resp. at 11-12. However, only the government can actually decide to grant a passport, so only the government can make such a promise. *See* Part III.B.2., *infra*. Therefore, any contract Plaintiff would have had with Defendant would have been made in Defendant's sovereign, not proprietary, capacity.[4]

2. **Mr. Awad's claims do not meet the jurisdictional requirements for contracts made in the government's sovereign capacity.**

Since Plaintiff's alleged contract with the government was made in the government's sovereign capacity, this Court will only have jurisdiction if (1) the persons who made the contract on behalf of the government, in this case a Department of Justice attorney and a United States Attorney, had authority to bind the government to pay monetary damages; and (2) the contract's language provides for the payment of monetary damages in case of a breach by the government. *Kania*, 650 F.2d at 268.

First, the maker of the contract must have "specific authority . . . to make an agreement obligating the United States to pay money." *Id*. Without such specific authority, this Court has generally held that it does not possess subject matter jurisdiction over agreements made in the course of criminal proceedings, such as plea agreements, immunity agreements, and witness protection agreements. *Sadeghi*, 46 Fed. Cl. at 662 (finding no jurisdiction over breach of a plea agreement); *see also Sanders v. United States*, 252 F.3d 1329, 1331, 1336 (Fed. Cir. 2001) (finding that this court lacked jurisdiction over a post-trial stipulated release agreement); *Kania,* 650 F.2d at 269 (deciding that the court had no jurisdiction over an immunity agreement); *Drakes v. United States*, 28 Fed. Cl. 190, 194-95 (1993) (holding that the court had no jurisdiction over an alleged breach of a plea agreement); *Grundy*, 2 Cl. Ct. at 598-99 (finding that the court lacked jurisdiction over a witness protection agreement). This is because "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).

The government employees who allegedly contracted with Mr. Awad did not have such specific authority. For example, in at least two of the above cases and in the case at bar, one of the people who allegedly made the contract on behalf of the government was a member of the

---

[4] During Plaintiff's appeal of the district court's transfer order, he even argued that *Kania* barred the Court of Federal Claims from hearing his suit, saying that the government acted as a sovereign when making the alleged contract with Plaintiff. *See Awad*, 301 F.3d at 1374.

United States Attorney's Office. *See Sanders*, 252 F.3d at 1331; *Sadeghi*, 46 Fed. Cl. at 661. However, neither *Sanders* nor *Sadeghi* found that the member of the U.S. Attorney's Office had the authority to bind the government to pay monetary damages upon breach. Similarly, the Court here finds that there is no indication that the United States Attorney or the attorney from the DOJ actually had authority to obligate the federal government to pay money. Furthermore, as in *Kania*, Plaintiff has made "no attempt to show the[se attorneys] had such authority." 650 F.2d at 268.

Plaintiff, however, requests discovery on the issue of authority. He argues that "[t]he fact that Plaintiff cannot establish through his initial pleading that the specific Government representatives had authority to make a binding contract does not subject the complaint to dismissal." Pl.'s Resp. at 10. Plaintiff supports his position by citing to *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1380-81 (Fed. Cir. 2001), which found that an "explicit" allegation of authorization was not needed for a plaintiff to survive a motion to dismiss. Although this statement is true, the Court can still grant Defendant's motion to dismiss if it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). Such is the case here, since authority over citizenship and passport issues is not vested in the agencies with which Plaintiff had contact.

In fact, as Defendant notes, the law clearly indicates that the government representatives who allegedly promised Plaintiff citizenship and a passport (a United States Attorney and an attorney from the DOJ) did not have the authority to do so. *See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (hereinafter "Def.'s Reply") at 4; *see also* 8 U.S.C. § 1421(a); 28 C.F.R. § 0.105(b) (delegating authority over citizenship matters to the Attorney General, who had further delegated the function to the Commissioner of the Immigration and Naturalization Service (INS) during the time when Plaintiff was seeking citizenship); 22 U.S.C.§ 211a (delegating the authority to issue passports to the Secretary of State); *Haig v. Agee*, 453 U.S. 280, 292-93 (1981) (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (1 Pet.) 692, 699 (1835) (stating that a passport is "a document . . . addressed to foreign powers . . . , by which the bearer is recognised, in foreign countries, as an American citizen"). In *Sommers*, however, the opposite was true: "there [wa]s nothing in the record to indicate that [the government officials] lacked such authority." *Sommers*, 241 F.3d at 1381. Therefore, since no facts revealed through discovery could show that the government's agents in this case had authority to bind the government to monetary damages, discovery is not required on this issue.

Furthermore, discovery will not be helpful because Plaintiff cannot satisfy the second prong of the test: The contract does not "spell[] out how in such a case the liability of the United States is to be determined," or, in other words, it does not "clearly and unmistakably subject[] the government to monetary liability for any breach." *Kania*, 650 F.2d at 268; *Sanders*, 252 F.3d at 1335. Furthermore, "such liability should not be implied." *Sanders*, 252 F.3d at 1336. Unfortunately for Plaintiff, he alleges no language, explicit or otherwise, requiring the government to pay monetary damages upon breach. In addition, the contract as alleged provides for a non-monetary remedy if the government breaches its obligations – Plaintiff's return to

Switzerland. *See* Am. Compl. ¶ 7. This indicates that a remedy was contemplated, but that a monetary award was not chosen as the proper form of damages under the alleged contract.

### C. *Has Plaintiff stated a claim upon which relief can be granted?*

Since this Court finds that it lacks jurisdiction over Plaintiff's claim, it is unnecessary to determine whether Plaintiff has stated a claim upon which relief can be granted.

## IV. Conclusion

Although the Court sympathizes with Plaintiff's position in this matter that he should have his day in court, the law requires a finding that this Court does not have subject matter jurisdiction over Plaintiff's breach of contract action. It would appear that Plaintiff's only recourse would be the Congressional Reference jurisdiction of the United States Court of Federal Claims. Therefore, it is ORDERED that this case be DISMISSED without prejudice. The Clerk of the Court is instructed to enter judgment for Defendant.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge